# Robert J. Stoney, Trustee, Plff. in Err., v. F. Edward Winterhalter.

In an action of ejectment by W. against his stepfather, who was his guardian, the evidence was that the stepfather owed a balance on his guardianship account; that to settle this he executed a deed properly witnessed and acknowledged to W. for a lot of ground, the consideration mentioned being the amount of the balance due; that he never delivered possession of the ground and continued to collect the rents from it and control it; that four years afterwards he died and the deed was found in his safe; that W. lived in the family of his stepfather and worked for him. · One witness also testified that he had seen the deed in the possession of W. shortly after the date of its execution. The above evidence was submitted to the jury and a verdict was rendered for the plaintiff. *Held,* that the evidence was such that it could not legally be withdrawn from the jury, and that a wrong verdict could only be corrected by a new trial, the granting of which was not under the control of the supreme court.

(Argued October 25, 1887. Decided November 7, 1887.)

October Term, 1887, No. 35, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Error to the Common Pleas No. 2 of Allegheny County to review a judgment in favor of the plaintiff in an action of ejectment. Affirmed.

This action was brought by F. E. Winterhalter against R. J. Stoney, trustee of the estate of Frederick Kaiser, deceased, to recover a lot of ground alleged to have been deeded by Kaiser to the plaintiff.

The facts are fully stated in the charge of the court.

The plaintiff offered under objection a deed from Frederick Kaiser to Edward Winterhalter (F. E. Winterhalter). Objection overruled and evidence admitted. First assignment of error.

The charge of the court below, WHITE, J., was substantially as follows:

This is an action of ejectment to recover possession of some property in the eleventh ward of this city, a lot or two lots of

NOTE.—For proof of the delivery of a deed, see note to Miller v. Eshleman, 3 Sad. Rep. 13.

ground, fronting 20 feet on Devillier street, running back about 189 feet and fronting on another street, on which, I presume, there are some buildings erected. The property is claimed by the plaintiff as conveyed to him by Frederick Kaiser, deceased. He offers in evidence a deed, dated April 18, 1878, from Frederick Kaiser and Theresa, his wife, to Edward Winterhalter, the plaintiff. This deed is properly executed, purporting to be for the consideration of $4,500, with a receipt, signed by Frederick Kaiser, for the money, and witnessed by J. L. Koethen, Jr., the deed itself being witnessed by J. L. Koethen and reading "sealed and delivered in presence of J. L. Koethen" as a witness. The deed is also properly acknowledged by Frederick Kaiser and his wife, before J. L. Koethen, Jr., notary public.

[On the face of the deed the plaintiff has a perfect title to this property. The deed is not recorded. That is not necessary to a perfect title. We have a law requiring deeds to be recorded within six months after they are executed, but that is only to protect the vendee against a subsequent conveyance by the vendor. Where the vendee takes possession, or where there has been no other conveyance by the vendor, the vendee has a perfect title without recording his deed. A great many people, especially, as I have found, those of German connection, do not record their deeds, but keep them, sometimes fifteen, twenty, or thirty years, without having them recorded. On the face of this deed, then, the plaintiff has a perfect title to the property claimed by him in this action.] 2

But it is contended by defendants that this deed was never delivered. As I have said, on the face of the deed the plaintiff has a good title; and, if he had been in possession of the deed at the time the old gentleman died, I presume his title would have been indefeasible, because the presumption would be that it was delivered, if he had possession of it; but it seems that at the time the old gentleman died the deed was in his safe and afterwards in the possession of his executor, Mr. Henry, who also died; and after his death it came into the possession of Mr. Stoney, the present trustee and defendant in this action, but personally having no interest in it. He represents the residuary legatee in the will, Frederick Kaiser, Jr., who is the son of the old gentleman. Mr. Stoney says that he got this deed in a tin box with the papers of Frederick Kaiser, deceased, and that with this deed there was also a blank mortgage and bond; that

he does not know where the deed was, or with what papers it was at the time of Mr. Kaiser's death; nor have we any evidence on that subject other than simply something to indicate that the deed was in the safe of Mr. Kaiser at the time of his death; that it was demanded by the plaintiff and refused by Mr. Henry, the trustee; and perhaps Mr. Henry was justifiable in refusing to give it up without the title being in some way decided, inasmuch as the deed was found among the papers of old Mr. Kaiser. The fact that it was found in his possession, or among his papers at the time of his death, would be prima facie evidence that the deed had never been delivered.

[Further, the evidence shows that the plaintiff never had the exclusive possession of this property. The deed was made in 1878. Mr. Kaiser died, I believe, in 1882, four years after the deed was dated; and during that time Mr. Kaiser collected the rents, paid the taxes, and controlled and managed the property, and since his death his executors have done it, the plaintiff not bringing his action until a year or so ago. The bringing of the action, however, at the late date has very little to do with the case. A man may hope to settle a case and defer bringing suit; and it will not do always to say that because a man does not hurry up and jump into law, and waits, hoping to adjust the matter, that that is to be counted to his prejudice afterwards.] 3

I believe these are the material points on which the defense relies in their claim that this deed never was delivered. [I might say also that an indication that the deed was not delivered was the finding of the blank bond and mortgage by Mr. Stoney in connection with this deed, the blank mortgage being written by the same person who wrote the deed and bearing date the same day. These facts are relied upon by the defendant as evidence, conclusive to the jury, that this deed never was delivered, and of course if it never was delivered the plaintiff cannot recover. The plaintiff however replies to all that, or rather by evidence in chief and direct undertakes to prove that there was a delivery of this deed. The evidence mainly on that point was the testimony of Mr. Porte: that young Winterhalter, the plaintiff, brought this deed to him—he believes it to be the deed —some time after its execution. Of course if that is true, it shows that he had possession of the deed. If you believe that Mr. Porte had this deed, that it was brought to him by young

Winterhalter to see if it was right, it would be very strong if not conclusive evidence that it had been handed over to Winterhalter by Mr. Kaiser.   The fact of its afterwards getting back into the safe would be of very little consequence.   But Mr. Porte may be mistaken, as the defendant's counsel contends; that it must have been another deed that old Mrs. Kaiser referred to.   These are questions of fact for you.]  4

[The plaintiff also has the testimony of several witnesses as to declarations of the old gentleman, that he had given, or intended to give, his stepson, Winterhalter, property.   Some of them referred to it as "property on the hill,"—and this, it appears, was the only property that he had on the hill—and others that he intended to give or had given him property, without specifying where it was; and then the testimony of a witness that he spoke of this very house as "Ed's house."   All of these are matters to be considered by you.]  5

[It is also suggested that the fact of a blank bond and mortgage being drawn up by Mr. Koethen and at the time the deed was drawn and being found among Mr. Kaiser's papers is very strong evidence that it was either a purchase by young Winterhalter, or that there was an intention of the old gentleman to give it to him, and that intention never carried out.   The deed purports to be for the consideration of $4,500.   The bond and mortgage is only for the sum of $2,000.   Now a man may, in giving a deed making a gift of property,—and it is very customary in fact,—put down a substantial consideration.   Sometimes the deed says:  "In consideration of $1 and of natural love and affection;" but perhaps more usually when a deed is not strictly from a father to a son or stepson a substantial consideration is put in the deed.   Sometimes it may not be the true value of the property.

Now we have only one witness as to how this deed came to be executed.   Old Mr. Kaiser is dead, and the young man is therefore incompetent as a witness.   But the widow, the mother of the plaintiff here and the wife of Mr. Kaiser, was present when this deed was executed, and she signed it with her husband.   She has given testimony as to how it came to be executed.   We have no evidence that young Winterhalter ever purchased this property from the old gentleman; that there was any bargain or any talk of bargaining for it; no evidence that he ever knew anything about this bond and mortgage; but the old lady testifies

that when she married Mr. Kaiser, in Canton, Ohio, this boy was about three years old. Her former husband had had some property and was in business there. Mr. Kaiser sold off everything and wanted to come to the city of Pittsburgh, and in order to effect a sale of the property out there he was appointed guardian of this child three years of age, and that as guardian he received money or property that belonged to the ward, or in which the ward had an interest. From that time on the boy lived with the old gentleman—with his mother and stepfather. The father had but one son, Frederick Kaiser, Jr. The two boys grew up together in the family and worked for the old gentleman in the store. Then Mrs. Kaiser says that about the time this deed was executed, she received some money from her father's estate in Germany and that Mr. Kaiser got that money; it went into their business, and that she then suggested to him that Edward, her son, wanted a settlement with him as guardian; that the old gentleman then proposed to her to give him a house and lot up on Devillier street, by way of settling that guardian account, and wanted to know from her if that would do; and she assented to it, and in consequence of that, she says, this deed was executed. If you believe that testimony, that was a substantial consideration for this deed, either in whole or in part; and the fact that no provision is made in his will for the son would indicate either that he had in some way settled for what was due the stepson from him as guardian, or that he had died without providing that the son should be repaid what he had received on his account, unless it had been settled in some other way. The old lady's testimony is the only testimony we have as to why this deed was executed; and that is utterly inconsistent with the idea that it was a purchase by the son, or that there was any bond or mortgage accompanying it.] 6

Mr. Koethen drew up the papers as he was directed to do by Mr. Kaiser. He says he had them prepared in that way and was not present when the deed was executed, because his son is the witness to the deed, and took the acknowledgment of it. They know nothing more about it. It does not seem that young Winterhalter was there or ever called upon the Koethens in reference to it. [It is material, in view of this case, to know why the deed was executed. It was executed and executed for some purpose. What was that purpose? And it is material, too, bearing upon the question as to the delivery of the deed.

If these parties had been total strangers, living at different places, perhaps the jury might require stronger evidence of actual delivery than they would where it is father and son, or father and stepson, especially in view of the testimony of the old lady. It seems that the plaintiff lived with his father and mother until he got married, or shortly before that time, and was still working for Frederick Kaiser in his store, down, I believe, until the time of his death. Had the plaintiff any papers or did he keep anything of that kind anywhere himself? Was this deed simply put in the safe for safe-keeping, It might also bear some little on the question whether he would exact from the old gentleman the adverse possession of the property, and exact all rents against him. There is some evidence that he was somewhat peculiar, and would he not under the circumstances defer very largely to the wishes of the old man?] 7

[And if you believe the account that was put in evidence here, that the old gentleman received rents from the house and lot of the plaintiff in Canton, Ohio, it would be very natural also for him to receive rents from this house and lot here in the city.] 8

[And I say the relation of these parties to each other, the old gentleman being the guardian of the son, and having some money of the son's, and Mrs. Kaiser's testimony, are all to be considered by you as bearing upon the question whether there was a delivery or not, either directly handing it over to him or delivering it to him and then keeping it in the safe for safety; because the mere fact of its being in the safe, of itself would not disprove delivery. I say it is prima facie evidence that there was no delivery, but it is for you to say whether the evidence satisfies you that this deed was executed either for the purpose of a gift or in payment of what the old gentleman owed him; and if it was executed for either, or both purposes combined, and delivered over to him, but kept by the old gentleman in his safe simply for safe-keeping, that would be a good title. A man may make a deed by way of a gift, even to a stranger, where it is a small portion of his estate. It seems that Mr. Kaiser had a very large estate; enough to amply justify giving a deed for a house and lot worth $4,000 or $5,000, even to a stranger, much more to a son or stepson; the son of his wife; one he had raised and who had been working for him; one who, as the evidence would indicate, was quite as kind to him as was his own son.] 9

You will take all the facts into consideration, and you will be

fully satisfied that this deed was delivered to the plaintiff, in order to enable him to recover.

Verdict and judgment for plaintiff.

The assignments of error, 2–9, specified the portions of the charge inclosed within brackets and designated by exponents, respectively.

*William S. Pier,* for plaintiff in error.—The first assignment of error is to the admission in evidence of the deed which we contend was never delivered. It was produced at the trial by us and was in our possession, the grantor's representatives' possession, or, in other words, at the time of the trial it was in the dead grantor's possession. It was in no way subject to the power or control of our adversary, named as the grantee in the deed. This fact alone made out a prima facie case for us, and against the delivery of the deed. Hatch v. Haskins, 17 Me. 391; Duraind's Appeal, 116 Pa. 93, 8 Atl. 922; Woodman v. Coolbroth, 7 Me. 181; 3 Washb. Real Prop. No. *581; Ford v. James, 2 Abb. App. Dec. 162.

If the deed had come out of the possession of the plaintiff, the proof would have been sufficient to have authorized its admission in evidence for him; but that would have been because the possession by the plaintiff below would have been prima facie evidence of its delivery. The burden was shifted when the possession of the deed appeared in the defendant, and the very thing to be established in the delivery. Jackson v. Inabnit, 2 Hill, Eq. 410; Critchfield v. Critchfield, 24 Pa. 103; Duraind's Appeal, 116 Pa. 93, 8 Atl. 922.

*John Barton* and *A. B. Force,* for defendant in error.—It is not of the slightest consequence that the deed was not recorded, or that it was kept in the father's safe after delivery; especially as the evidence discloses that the custody was as much in the grantee as the grantor, both having access thereto. It is immaterial whether the transaction be regarded as a gift or in payment of an existing indebtedness, as in either case the custody of the deed by the father was the son's custody. Wheeler v. Kidder, 14 W. N. C. 330.

Great stress is laid upon the alleged error of the court below in the admission of the deed in evidence, and yet upon the au-

thority of Critchfield v. Critchfield, 24 Pa. 102. which plaintiff in error himself cites, we are told, "the question of delivery is for the jury." Again: "It is true that the grantor may have the possession of his own deed as bailee for the grantee."

In the more recent case of Galbraith v. Zimmerman, 100 Pa. 377, Justice GREEN says: "Delivery is a matter of fact, and a question of delivery is a question of fact, and in all ordinary cases must be disposed of by a jury."

We candidly submit that neither the case of Critchfield v. Critchfield, nor Duraind's Appeal, 116 Pa. 93, 8 Atl. 922, upon which counsel so strongly relies to convict the court below of error, are applicable to the facts in the case at bar.

PER CURIAM:

The material question in this case was the delivery of the deed of April 18, by Kaiser to Winterhalter; this was a question of fact and was properly submitted. We cannot, therefore, sustain the exceptions to the charge. The jury might, from the evidence, well have found differently from what they did find; but as that evidence could not have been legally withdrawn from them, a wrong verdict could only be corrected by a new trial, and with this we have nothing to do.

Judgment affirmed.